**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| REIS, INC. and REIS SERVICES, LLC, | ) |
| | ) Case No. 1:15-cv-07905-GBD |
| Plaintiffs, | ) |
| vs. | ) |
| | ) ECF Case |
| LENNAR CORP., RIALTO CAPITAL MANAGEMENT, LLC, and RIALTO CAPITAL ADVISORS OF NEW YORK, LLC, | ) |
| | ) ORAL ARGUMENT REQUESTED |
| Defendants. | ) |

**DEFENDANTS' REPLY MEMORANDUM**
**IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

## **TABLE OF CONTENTS**

**Page**

**PRELIMINARY STATEMENT** .................................................................................................... 1

**ARGUMENT** ................................................................................................................................. 2

    I.    THE CFAA CLAIMS FAIL BECAUSE REIS HAS NOT ALLEGED A RECOVERABLE "LOSS" (COUNTS I AND II). ................................................... 2

    II.    REIS CANNOT ENFORCE ITS TERMS OF SERVICE (COUNT VI). .............. 4

    III.    REIS HAS NOT PLED FRAUD WITH "PARTICULARITY" (COUNT V). ................................................................................................................ 5

    IV.    REIS FAILS TO STATE A CONVERSION CLAIM (COUNT VII). ................... 7

    V.    REIS FAILS TO STATE A CLAIM FOR MISAPPROPRIATION (COUNT IX). ................................................................................................................. 8

    VI.    REIS' QUASI-CONTRACT CLAIMS FAIL (COUNTS XI AND XIII). ............. 9

    VII.    REIS' CLAIMS RELATED TO THE ALLEGED "DOE UNAUTHORIZED USERS" FAIL (COUNTS II, III, IV, VI, VIII, X, XII, XIV). .................................................................................................................... 10

    VIII.    THE CLAIMS AGAINST LENNAR SHOULD BE DISMISSED. .................... 10

**CONCLUSION** ........................................................................................................................... 11

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Arenson v. Whitehall Convalescent & Nursing Home, Inc.*,
  880 F. Supp. 1202 (N.D. Ill. 1995) ................................................................................6

*Be In, Inc. v. Google Inc.*,
  No. 12-CV-03373-LHK, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013) .....................5

*Berkson v. Gogo LLC*,
  97 F. Supp. 3d 359 (E.D.N.Y. 2015) ...............................................................................4

*Bigelow v. RKO Radio Pictures, Inc.*,
  327 U.S. 251 (1946) ...........................................................................................................6

*Camofi Master LDC v. Coll. P'ship, Inc.*,
  452 F. Supp. 2d 462 (S.D.N.Y. 2006) ...........................................................................6

*Cvent, Inc. v. Eventbrite, Inc.*,
  739 F. Supp. 2d 927 (E.D. Va. 2010) .........................................................................4, 5

*Czech v. Wall St. on Demand, Inc.*,
  674 F. Supp. 2d 1102 (D. Minn. 2009) ..........................................................................2

*Dauphin v. Crownbrook ACC LLC*,
  No. 12-CV-2100 (ARR)(SMG), 2014 WL 2002822 (E.D.N.Y. May 15, 2014) .......8

*DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*,
  770 F. Supp. 2d 627 (S.D.N.Y. 2011) ...........................................................................6

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
  62 F. Supp. 3d 325, 349 (S.D.N.Y. 2014) ....................................................................9

*Grynberg v. Eni S.p.A.*,
  No. 06 CIV. 6495 (RLC), 2007 WL 2584727 (S.D.N.Y. Sept. 5, 2007) ...................9

*Hyo Jung v. Chorus Music Studio, Inc.*,
  No. 13-CV-1494 (CM)(RLE), 2014 WL 4493795 (S.D.N.Y. Sept. 11, 2014) ..........8

*In re BitTorrent Adult Film Copyright Infringement Cases*,
  296 F.R.D. 80 (E.D.N.Y. 2013) ....................................................................................10

*In re S. African Apartheid Litig.*,
  633 F. Supp. 2d 117 (S.D.N.Y. 2009) .........................................................................10

# TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Jackson v. Broadcast Music, Inc.*,
  No. 04 CV 5948(TPG), 2006 WL 250524 (S.D.N.Y. Feb. 1, 2006), *aff'd*, 2007
  WL 2914516 (2d Cir. Oct. 5, 2007) ............................................................................................7

*JBCHoldings NY, LLC v. Pakter*,
  931 F. Supp. 2d 514 (S.D.N.Y. 2013) ......................................................................................10

*Kiryas Joel All. v. Vill. of Kiryas Joel*,
  No. 11 CIV. 3982 (JSR), 2011 WL 5995075 (S.D.N.Y. Nov. 29, 2011) ..................................8

*Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*,
  797 F.3d 160 (2d Cir. 2015) ......................................................................................................6

*Marketxt Holdings Corp. v. Engel & Reiman, P.C.*,
  693 F. Supp. 2d 387 (S.D.N.Y. 2010) ........................................................................................8

*Melcher v. Apollo Med. Fund Mgmt, LLC*,
  105 A.D.3d 15 (1st Dep't 2013) ................................................................................................9

*Nexans Wires S.A. v. Sark-USA, Inc.*,
  166 F. App'x 559 (2d Cir. 2006) ...............................................................................................3

*Orbit One Commc'ns, Inc. v. Numerex Corp.*,
  692 F. Supp. 2d 373 (S.D.N.Y. 2010) ........................................................................................3

*Palatkevich v. Choupak*,
  Nos. 12 Civ. 1681(CM), 12 Civ. 1682(CM), 2014 WL 1509236 (S.D.N.Y.
  Jan. 24, 2014) ...........................................................................................................................10

*Specht v. Netscape Commc'ns Corp.*,
  306 F.3d 17 (2d Cir. 2002) ........................................................................................................4

*Sullivan v. Kodsi*,
  373 F. Supp. 2d 302 (S.D.N.Y. 2005) .....................................................................................6, 7

*Thyroff v. Nationwide Mut. Ins. Co.*,
  8 N.Y.3d 283 (2007) ..................................................................................................................7

*Transaero, Inc. v. Chappell*,
  No. 13-CV-5752 (JFB)(GRB), 2014 WL 1783732 (E.D.N.Y. May 6, 2014) ...........................8

*Universitas Educ., LLC v. T.D. Bank*,
  No. 15-cv-5643 (SAS), 2015 WL 9304551 (S.D.N.Y. Dec. 21, 2015) .....................................8

*UST Private Equity Inv'rs Fund, Inc. v Salomon Smith Barney*,
  288 A.D. 2d 87 (1st Dep't 2001) ...............................................................................................7

**Statutes**

18 U.S.C. § 1030(c)(4)(A)(i)(I) ......................................................................................................2

**PRELIMINARY STATEMENT**

Reis' opposition, like its Complaint, is long on conclusory assertions, but woefully short on supporting facts.  Try as it might, Reis cannot cure the fundamental pleading deficiencies in its Complaint:

- The CFAA claim fails because the only alleged "loss"—investigative costs consisting mainly of $76,364 it paid for software—is one that Reis admits it would have incurred even absent Defendants' alleged intrusions;

- The contract claims against Lennar and Rialto fail because Reis alleges no facts showing that Defendants assented to, or had notice of, Reis' "browsewrap" Terms of Service;

- The fraud claim fails because Reis never alleges a misrepresentation—the use of Mr. Lederman's credentials to log into Reis' database may have created a misimpression on Reis' part, but it was not a misrepresentation on Defendants' part;

- The conversion claim fails because Reis does not claim that Defendants destroyed any of Reis' reports or denied Reis access to those reports;

- The trade secret misappropriation claim, which Reis now restyles as an unfair competition claim, fails because Reis does not allege that Defendants diverted any of Reis' customers or otherwise committed any anticompetitive acts;

- The quasi-contract claims are pre-empted by the agreement between Reis and GE Capital, Mr. Lederman's former employer; and

- The claims against the "Doe Unauthorized Users" fail because there are still no facts to suggest that any of these "Doe" users were, in fact, unauthorized.

Reis seems to believe that there is something "extraordinary" about Defendants' position that the Complaint fails as a matter of law.  In truth, Defendants' position is simply a reflection of the fact that Reis has brought the wrong lawsuit against the wrong parties.  Reis' Complaint boils down to this—Reis entered into a subscription agreement with GE Capital, and one employee continued to use his GE Capital credentials to log onto Reis' website after leaving GE Capital in 2003.  If true, Reis' appropriate remedy was a contract action against GE Capital for breach of its Terms of Service years ago, not some manufactured tort claims against Defendants today.

**ARGUMENT**

I.   **THE CFAA CLAIMS FAIL BECAUSE REIS HAS NOT ALLEGED A RECOVERABLE "LOSS" (COUNTS I AND II).**

In its opposition brief, Reis states that "Defendants do not actually dispute that Reis has alleged a violation of the [CFAA]." (Reis' Mem. of Law in Opp. to Defs.' Mot. to Dismiss ("Opp.") at 4.) Yes, they do. To state a claim under the CFAA, Reis must allege some recoverable "loss" caused by Defendants' allegedly improper access of Reis' database, 18 U.S.C. § 1030(c)(4)(A)(i)(I), and Reis has failed to do so.

The only "loss" that Reis claims to have suffered in this case is the cost of investigating Defendants' alleged unauthorized access of its database. (*See* Opp. at 6.) But Reis has already conceded that these investigative costs were not caused by Defendants' alleged unauthorized use; in fact, Reis admits it would have incurred these costs even absent Defendants' conduct. *See* 18 U.S.C. § 1030(c)(4)(A)(i)(I) (plaintiff must show "loss" "resulting from" defendant's unauthorized access); *Czech v. Wall St. on Demand, Inc.*, 674 F. Supp. 2d 1102, 1114 (D. Minn. 2009) (costs recoverable as "loss" under the CFAA "must be distinguished from a cost . . . which [plaintiff] would have incurred even if" the violation had not occurred). In at least three other actions filed in this Court, Reis has alleged that it incurred these very same investigative costs— including $76,364 to develop "proprietary investigatory software"—as a result of the unauthorized use of its systems ***by other, unrelated parties.*** (*See* Defs.' Mem. in Supp. of Mot. to Dismiss ("Mot.") at 10-11.) Thus, by Reis' own admission, it would have incurred these investigative costs regardless of whether Defendants accessed Reis' database. Having already attributed these costs to access by third parties, Reis cannot now point to these same costs as a "loss" resulting from Defendants' alleged access.

2

At the very least, the CFAA claim should be dismissed to the extent it is based on the $1,629,948 in revenue that Reis purportedly lost because Defendants downloaded 4,548 of Reis' reports using Mr. Lederman's credentials. Reis concedes, as it must, that such alleged lost revenues do not constitute a recoverable "loss" under the CFAA. (*See* Opp. at 6 (Reis is "not rely[ing] on its lost revenue to satisfy the 'loss' requirement of the CFAA.").) Indeed, the law is clear that a plaintiff cannot recover any lost revenues under the CFAA unless they result from an "interruption in service." *Nexans Wires S.A. v. Sark-USA, Inc.*, 166 F. App'x 559, 562 (2d Cir. 2006) ("[T]he plain language of the [CFAA] statute treats lost revenue as a different concept from incurred costs, and ***permits recovery of the former only where connected to an 'interruption in service.'***"); *see also Orbit One Commc'ns, Inc. v. Numerex Corp.*, 692 F. Supp. 2d 373, 386 (S.D.N.Y. 2010) ("[A] claimant may recover lost revenue pursuant to the CFAA only when [such] loss is connected to an interruption of service.").[1] Because Reis does not allege that Defendants caused any interruption in its services, Reis' attempt to recover its so-called "lost revenues" under the CFAA fails as a matter of law. *Nexans*, 166 F. App'x at 562-63.

Reis' CFAA claim against Lennar and Rialto is also time-barred under the CFAA's two-year statute of limitations. Hoping to avoid dismissal, Reis argues that the statute of limitations "is an argument for summary judgment or trial." (Opp. at 8.) But, again, Reis' position is undermined by its own Complaint. According to the Complaint, even though Defendants' alleged unauthorized usage occurred in 2010, Reis did not discover this fact until 2015, because that is when Reis first learned that Mr. Lederman "had stopped working for his previous employer." (Compl. ¶ 31.) But Reis knew that Mr. Lederman had stopped working for his previous employer in 2010, when it received a list of authorized employees from Rialto New

---

[1] Unless otherwise specified, internal quotations and citations are omitted, and all emphasis has been added.

3

York that included Harvey Lederman. (*See* Opp. at 8.) Thus, it is undisputed that, in 2010, Reis had in its possession the precise information that it claims led to its discovery of Defendants' unauthorized usage, so the CFAA claims expired in 2012. Reis' contention that it "had no way to know that the 'Harvey Lederman' identified by Rialto New York was the same Harvey Lederman" that worked for GE Capital, (*id*.), is not only silly, it is also belied by their own conduct—Reis shut off Mr. Lederman's credentials in 2010 specifically because it knew that the Harvey Lederman working for Rialto New York was the same Harvey Lederman who previously worked for GE Capital. Thus, Reis' CFAA claims are time-barred.

## II.     REIS CANNOT ENFORCE ITS TERMS OF SERVICE (COUNT VI).

Reis concedes that its Terms of Service were contained in a "browsewrap" agreement, and the law is clear that "[f]or an internet browsewrap contract to be binding, consumers must have reasonable notice of a company's 'terms of use' ***and exhibit 'unambiguous assent' to those terms.***" *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 395 (E.D.N.Y. 2015). Here, Reis does not allege, let alone offer facts that show, Lennar or Rialto exhibited any type of "assent" to its Terms of Service, much less "unambiguous assent." The most Reis can say, in conclusory fashion, is that it "alleges both actual and constructive notice" on the part of Defendants. (Pl. Opp. at 14.) That is not enough. To state a claim for breach of its Terms of Service, Reis must also allege that Defendants assented to those Terms, and it cannot to do so. *See Specht v. Netscape Commc'ns Corp*., 306 F.3d 17, 35 (2d Cir. 2002) ("[r]easonably conspicuous notice of the existence of contract terms ***and unambiguous manifestation of assent to those terms*** by consumers are essential" to enforce browsewrap agreements).

Reis' Terms of Service are identical to the browsewrap agreement that was held unenforceable in *Cvent, Inc. v. Eventbrite, Inc.*, 739 F. Supp. 2d 927 (E.D. Va. 2010). There, as here, plaintiff tried to enforce a set of terms of use that were accessible "via a link buried at the

4

bottom of the first page" of a website against a corporate defendant that had used the site. *Id.* at 937. And there, as here, the defendant was "not required to click on that link [or] read or assent" to the terms before using the site. *Id.* The court dismissed plaintiff's contract claim, holding that "bare assertions that its Terms of Use were prominently displayed" on the site were "plainly insufficient [] to state a plausible claim for relief." *Id.* The result should be no different here.

Reis vainly attempts to distinguish *Specht* and *Berkson* on the ground that the "unambiguous assent" requirement applies only to individuals, not corporations. Neither case rests its holding on such a distinction. Instead, *Specht, Berkson* and similar decisions have recognized that the enforceability of a browsewrap agreement turns on whether the user—be it an individual or a corporation—exhibited assent to the terms of service. *See Cvent,* 739 F. Supp. 2d at 937 (refusing to enforce a browsewrap against corporation because user never "manifested assent" to the site's terms); *Be In, Inc. v. Google Inc.*, No. 12-CV-03373-LHK, 2013 WL 5568706, at *9 (N.D. Cal. Oct. 9, 2013) (browsewrap unenforceable against corporation because "the mere existence of a link" to the terms of service is not enough to demonstrate assent).

Even if mere notice of the terms of a browsewrap agreement were enough to state a claim (and it is not), Reis has not alleged any facts that plausibly suggest Lennar or Rialto had notice of Reis' Terms of Service. Reis attempts to gloss over this pleading deficiency by arguing that Mr. Lederman's knowledge of the Terms of Service "can be imputed to Defendants." (Opp. at 14.) The problem, however, is that Reis never alleges any facts showing that Mr. Lederman had knowledge of the Terms of Service. (*See generally id.*) Thus, Reis' bald allegations about Defendants' purported "notice" cannot save its contract claim.

### III. REIS HAS NOT PLED FRAUD WITH "PARTICULARITY" (COUNT V).

Reis still has not identified any specific statement or misrepresentation it contends was fraudulent. Instead, Reis attempts to manufacture a misrepresentation where none exists by

5

arguing that anyone logging on to Reis' database using credentials issued to Mr. Lederman by GE Capital was representing that they were Mr. Lederman and they were affiliated with GE Capital. (Opp. at 9.) But there is no allegation that Defendants in fact made any affirmative representations about their identity or corporate affiliation. Instead, Reis argues that this was the impression it formed as a result of these "log-ins." Reis' own alleged misimpression does not obviate Reis' burden to plead a misrepresentation. *See DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 658 (S.D.N.Y. 2011) (dismissing fraud claim where "the complaint fails to identify, as it must, a single specific misrepresentation or omission of material fact"); *Camofi Master LDC v. Coll. P'ship, Inc.*, 452 F. Supp. 2d 462, 482 (S.D.N.Y. 2006) (dismissing fraud claim where plaintiff "fails to allege any specific fraudulent statements[.]")

Nor has Reis come close to satisfying the particularity requirements of Rule 9(b). Reis admits that it has not identified the individuals who made the alleged false representations—that is, who logged on—but argues that "in these circumstances" it does not need to identify those individuals. (Opp. at 9.) None of the cases Reis cites supports this proposition. In fact, the principal case on which Reis relies, *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, states in no uncertain terms that "[u]nder Rule 9(b), Plaintiffs must 'identify the speaker' of the allegedly fraudulent statements." 797 F.3d 160, 171 (2d Cir. 2015). While the court went on to hold that this requirement may be relaxed for certain "group-produced misrepresentations," such as "statements made in [an] offering document" and other "official materials produced in connection with the sale of securities," *id.* at 172-173, that exception has no application here. Reis' remaining cases do not even concern fraud claims.[2]

---

[2] *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 880 F. Supp. 1202 (N.D. Ill. 1995), concerns RICO claims. *Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251 (1946), is a 1946 Supreme Court case concerning treble damages for antitrust claims. And the plaintiff in *Sullivan v. Kodsi*, a statutory fraudulent conveyance

6

Even assuming that Reis had alleged a misrepresentation and had done so with sufficient particularity, Reis' reliance on any such statement was unreasonable as a matter of law. Reis admits that it possessed information showing that, in 2009 and 2010, anyone logging into Reis' database using Mr. Lederman's credentials was no longer affiliated with GE Capital. (Opp. at 12-13 (Reis "was able to identify the suspicious usage patterns that signaled Defendants' fraud" through "compliance investigations").) Reis, however, never availed itself of this information. Reis tries to excuse its failure by arguing that it "cannot possibly make real-time, individualized assessments as to whether a given user bearing a valid password is in fact authorized to use it," (*id.*), but this excuse is insufficient as a matter of law. *See Jackson v. Broadcast Music, Inc.*, No. 04 CV 5948(TPG), 2006 WL 250524, at *9 (S.D.N.Y. Feb. 1, 2006) ("Reasonable reliance cannot be adequately pleaded where a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means."), *aff'd*, 2007 WL 2914516 (2d Cir. Oct. 5, 2007); *UST Private Equity Inv'rs Fund, Inc. v Salomon Smith Barney*, 288 A.D. 2d 87, 88 (1st Dep't 2001) (no justifiable reliance where "plaintiff failed to make use of the means of verification that were available to it").

## IV. REIS FAILS TO STATE A CONVERSION CLAIM (COUNT VII).

Reis acknowledges that conversion is the "unauthorized [] exercise of the right of ownership over goods belonging to another ***to the exclusion of the owner's rights***," (Opp. at 17), and there is no allegation that Defendants ever denied Reis access to its own reports. That should be the end of the inquiry on Reis' conversion claims.

Nevertheless, Reis argues that, under *Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283 (2007), it need not allege that it was denied access to its reports. Reis' reliance on *Thyroff* is

---

case, specifically "identified the party" making the alleged conveyance. 373 F. Supp. 2d 302, 306 (S.D.N.Y. 2005).

misplaced. *Thyroff* stands for the unremarkable proposition that electronic documents may be the subject of conversion. But "*Thyroff* did not alter the traditional rule requiring 'the exercise of unauthorized dominion and control to the complete exclusion of the rightful possessor . . . .'" *Hyo Jung v. Chorus Music Studio, Inc.*, No. 13-CV-1494 (CM)(RLE), 2014 WL 4493795, at *8 (S.D.N.Y. Sept. 11, 2014); *Transaero, Inc. v. Chappell*, No. 13-CV-5752 (JFB)(GRB), 2014 WL 1783732, at *11 (E.D.N.Y. May 6, 2014) (same). Because Reis never alleges that it was denied access to its reports, it has no claim for conversion. *Dauphin v. Crownbrook ACC LLC*, No. 12-CV-2100 (ARR)(SMG), 2014 WL 2002822, at *11 (E.D.N.Y. May 15, 2014) (dismissing conversion claim where "defendant fails to establish how plaintiff's copying of those files, even if proven, would interfere with defendant's possession of the files").

Reis' conversion claims are also time-barred. Reis attempts to extend the three-year limitations period by bootstrapping its conversion claim to its fraud claim. (Opp. at 18.) This attempt fails. New York law prohibits Reis from taking advantage of a longer limitations period by alleging a fraud that "is merely incidental to the conversion." *Marketxt Holdings Corp. v. Engel & Reiman, P.C.*, 693 F. Supp. 2d 387, 396 (S.D.N.Y. 2010); *Universitas Educ., LLC v. T.D. Bank*, No. 15-cv-5643 (SAS), 2015 WL 9304551, at *2-3 (S.D.N.Y. Dec. 21, 2015) ("Time barred claims cannot be revitalized by tricks of pleading.").

V.   **REIS FAILS TO STATE A CLAIM FOR MISAPPROPRIATION (COUNT IX).**

Recognizing that its publicly available reports could never constitute trade secrets, Reis now attempts to re-characterize its trade secret misappropriation claim (Count IX) as a claim for unfair competition. (Opp. at 18-19.) Reis' attempt to swap claims in its opposition brief is procedurally improper and should be rejected. *Kiryas Joel All. v. Vill. of Kiryas Joel*, No. 11 CIV. 3982 (JSR), 2011 WL 5995075, at *10 n.9 (S.D.N.Y. Nov. 29, 2011) ("[T]he plaintiffs cannot use their opposition to the motion to dismiss to raise new claims or arguments.").

8

In any event, Reis has not alleged facts sufficient to state an unfair competition claim. To state such a claim, Reis must allege that it suffered some sort of "competitive injury" as a result of Defendants' "anticompetitive acts." *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 62 F. Supp. 3d 325, 349 (S.D.N.Y. 2014). At a minimum, Reis must allege that Defendants took "bad faith" acts to "divert[] [Reis'] customers and business" to Defendants. *Id.* at 349. Reis makes no such allegations. That is not surprising given that Defendants and Reis are not competitors. Thus, whether characterized as trade secret misappropriation or unfair competition, Count IX fails.

### VI.   REIS' QUASI-CONTRACT CLAIMS FAIL (COUNTS XI AND XIII).

A party cannot bring a "quasi-contract claim against a third-party non-signatory" where there is "a contract that covers the subject matter of the claim." *Melcher v. Apollo Med. Fund Mgmt, LLC*, 105 A.D.3d 15, 27-28 (1st Dep't 2013). Reis seeks to sidestep this rule by arguing that Reis' agreement with GE Capital "does not cover use of the Reis database by Defendants." (Opp. at 16.) Reis' argument is belied by its own allegations. According to Reis, its agreement with GE Capital specifically "prohibit[s] the use of credentials issued to one subscriber from being used for the benefit of another subscriber." (Compl. ¶ 4.) Clearly, by Reis' own admission, the GE Agreement "covers the subject matter" of unauthorized use, and thus the unjust enrichment and quantum meruit claims fail as a matter of law.

The unjust enrichment claim is also time-barred. Reis argues that its unjust enrichment claim should be governed by a six-year statute of limitations, (Opp. at 16-17), but that argument fails. Unjust enrichment claims are "governed by either a three-year statute of limitations when monetary relief is sought or a six-year statute of limitations when equitable relief is sought." *Grynberg v. Eni S.p.A.*, No. 06 CIV. 6495 (RLC), 2007 WL 2584727, at *3 (S.D.N.Y. Sept. 5, 2007). Here, Reis seeks monetary relief on its unjust enrichment claim, (Compl. ¶ 148), and thus that claim is subject to the three-year statute of limitations and is time-barred.

## VII. REIS' CLAIMS RELATED TO THE ALLEGED "DOE UNAUTHORIZED USERS" FAIL (COUNTS II, III, IV, VI, VIII, X, XII, XIV).

Hoping to resurrect its claims against Rialto New York, Reis uses its opposition brief to add new allegations specifying particular IP addresses supposedly used to access its database. As a threshold matter, these new allegations are procedurally improper and should be disregarded. *See Palatkevich v. Choupak*, Nos. 12 Civ. 1681(CM), 12 Civ. 1682(CM), 2014 WL 1509236, at *9 (S.D.N.Y. Jan. 24, 2014). Moreover, these new allegations do not change the analysis. IP addresses do not indicate the identity of a particular internet user, but only "the location at which one of any number of computer devices may be employed." *In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 84 (E.D.N.Y. 2013) (it "is unlikely to be the case" that an IP address could ever show the "true identity" of a user). Absent an allegation of simultaneous use of the same account from two different IP addresses, Reis' claim that these "Doe" users were also "unauthorized" amounts to nothing more than speculation. *See JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 527 (S.D.N.Y. 2013) ("[T]he plausibility requirement . . . asks for more than a sheer possibility that a defendant has acted unlawfully.")

In their motion, Defendants also noted that Reis supports its myriad claims for secondary liability against Rialto New York with nothing more than formulaic recitations of the elements of each cause of action. (Mot. at 24-25.) Reis has not responded to this point. Nor could it. Reis' secondary liability claims, Counts II, III, IV, VIII, X, XII, XIV, should be dismissed.

## VIII. THE CLAIMS AGAINST LENNAR SHOULD BE DISMISSED.

Reis has alleged no facts tying Lennar to any of the alleged misconduct. "[A] parent corporation is not liable for the acts of its subsidiaries simply because it owns the subsidiary's stock." *In re S. African Apartheid Litig.*, 633 F. Supp. 2d 117, 121 (S.D.N.Y. 2009). The claims against Lennar should be dismissed.

## **CONCLUSION**

For the reasons set forth herein, and in Defendants' opening brief, Defendants respectfully submit that the Complaint should be dismissed with prejudice for failure to state a claim.

Dated: New York, New York
       January 15, 2016

Kirkland & Ellis LLP

*/s/ Eric F. Leon, P.C.*
Eric F. Leon, P.C.
Kuangyan Huang
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

*Attorneys for Defendants Lennar Corp., Rialto Capital Management, LLC, Rialto Capital Advisors of New York, LLC*